_____

No. 95-4197
_____

Ralph Thomas,                          *
                                       *
          Appellant,                   *
                                       *
     v.                                *
                                       * Appeal from the United States
Frank O. Gunter; Karen                 * District Court for the
Shortridge, Superintendent;            * District of Nebraska
Robert Houston, Associate              *
Superintendent,                        *
                                       *
          Appellees.                   *

_____

               Submitted: September 9, 1996

                 Filed: January 8, 1997
_____

Before McMILLIAN, MAGILL and MORRIS SHEPPARD ARNOLD, Circuit
     Judges.
_____

McMILLIAN, Circuit Judge.


     Plaintiff Ralph Thomas appeals from a final order entered in the
United States District Court[1] for the District of Nebraska granting summary
judgment in favor of defendant prison officials, Thomas v. Gunter, No.
8:CV89-00728 (D. Neb. Nov. 9, 1995) (Memorandum Opinion), following our
remand with directions in an earlier appeal.  Id., 32 F.3d 1258, 1262 (8th
Cir. 1994) (Thomas).  For reversal, plaintiff argues that (1) defendants
violated his First Amendment rights by denying him daily access to a sweat
lodge for prayer and (2) the denial of access also violated his Fourteenth
Amendment right to equal protection because inmates of

_____

[1]The Honorable Lyle E. Strom, United States District Judge for
the District of Nebraska.

other religions had daily access to prison facilities for prayer. For the reasons discussed below, we affirm.

I.    Background

Plaintiff, a Native American, was incarcerated at the Omaha Correctional Center ("OCC") from January 1989 through February 1990. During this period, plaintiff requested defendants to provide daily and extended access on weekday afternoons to the prison sweat lodge for prayer. The sweat lodge is located in a restricted area of the prison and only approved inmates are allowed in the area. The sweat lodge is available to inmates for three hours on Saturday and three hours on Sunday mornings, and occasionally, if enough interest is shown, on weekend afternoons. The sweat lodge is also available for two and one-half hours on Wednesday evenings during daylight savings time and on all holidays.

When the prison chapel is not scheduled for use by a particular religious group, it is open to all religions when the coordinator is available. The prison chapel is available to Christians from 9:00-10:00 a.m. on Sundays, and 12:30-1:00 p.m. on Monday through Thursdays, and to Muslims from 1:00-1:30 p.m. everyday and 1:30-3:00 p.m. on Fridays.

Plaintiff submitted a request for daily access to the sweat lodge from 12:30-4:30 p.m. Defendants denied plaintiff's request allegedly for security reasons. Plaintiff brought this 42 U.S.C. § 1983 action against defendants claiming denial of daily access to the prison sweat lodge violated his First and Fourteenth Amendment rights. Plaintiff later modified his request to brief daily access in his third amended complaint.

The district court, upon recommendation of the magistrate, initially granted defendants' motion for summary judgment both on

the merits (i.e., whether the limitation of access to the sweat lodge was constitutional) and on the issue of whether defendants were entitled to qualified immunity.  Plaintiff appealed and this court reversed the district court's order and remanded the case for further proceedings consistent with our opinion.  Thomas, 32 F.3d at 1262.  We held there was a genuine issue of material fact as to whether the refusal to allow brief daily access to the prison sweat lodge was rationally related to a legitimate penological interest.  We further stated that prison officials would not be entitled to qualified immunity unless a rational relationship could be drawn between legitimate penological interests and the denial of even brief access to the prison sweat lodge.  On remand, the district court granted defendants' motion for summary judgment on the qualified immunity issue.  Slip op. at 19.  Plaintiff appeals.

II.  Discussion

We review a grant of summary judgment de novo.  The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc.. 477 U.S. 242, 249-50 (1986); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992); St. Paul Fire & Marine Ins. Co. v. FDIC, 968 F.2d 695, 699 (8th Cir. 1992).

In the first appeal, this court applied the doctrine of qualified immunity to the facts of the present case, as they had been developed at that point:

> It is true that officials engaged in executive functions, such as the operation of penal institutions, enjoy qualified immunity.  This immunity, however, is available only if their "conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); <u>accord</u> <u>Smith v. Marcantonio</u>, 910 F.2d 500, 501 (8th Cir. 1990). The proper inquiry in the present case, therefore, is whether the free exercise of religion within a penal setting is a clearly established right.

It has been "clearly established" since <u>Cruz v. Beto</u>, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972) (per curiam), that prison officials may not deny an inmate "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." <u>Id.</u> at 322, 92 S. Ct. at 1081. . . . [W]hile a special chapel or place of worship need not be provided for every faith, reasonable opportunities must be afforded to all prisoners. . . .

We cannot say, without reasons advanced by [defendants], that they acted reasonably in denying [plaintiff] daily access to the sweat lodge for prayer. If a rational relationship can be shown between legitimate penological interests and the denial of even brief access to the sweat lodge, such a denial may not have been unreasonable. In the absence of such a justification, [defendants] would not be entitled to qualified immunity from § 1983 liability.

<u>Thomas</u>, 32 F.3d at 1261.

On remand, the district court reviewed defendants' conduct, concentrating its analysis on the objective reasonableness of the conduct in relation to the clearly established law in force at the time of the alleged violation. The district court concluded that defendants had provided the Native American inmates with a reasonable opportunity to pursue their faith. Thus, the district court held defendants were entitled to qualified immunity.

For reversal, plaintiff argues that defendants failed to establish the required rational relationship between the denial of daily access to the sweat lodge and legitimate penological

interests.  Defendants argue that they demonstrated beyond genuine dispute that a rational relationship exists.

It has been "clearly established law" since 1972 that prison officials must afford inmates a reasonable opportunity to practice their religion.  See Cruz v. Beto, 405 U.S. 319, 322 (1972)(per curiam)(Cruz).  In Cruz, the Supreme Court held that it was unconstitutional to deny a Buddhist prisoner equal access to the prison chapel and equal opportunity to earn points of good merit for religious conviction.  Id. at 322.  In dicta, however, the Court explained that its holding was not to be construed as mandating that all religious groups, however few, must have identical facilities or access, and special accommodations need not be given to all faiths.  Id. at n.2.

Upon de novo review, we hold that defendants' denial of plaintiff's initial request for daily and extended access on weekday afternoons to the sweat lodge was rationally related to legitimate penological interests.[2]  First, Native Americans, with six scheduled hours per week at the sweat lodge, had more scheduled worship time per week than any other religious group, including Christians, who had three hours per week, and Muslims, who had five hours per week.  Second, Native Americans also had access to the non-denominational chapel whenever it was available.  Finally, plaintiff specifically requested four hours of daily access to the sweat lodge where inmates of other religions were allowed only a half hour of daily access for prayer.[3]

---

[2]Our holding does not address the merits of defendants' conduct; rather, it addresses whether it was objectively reasonable.

[3]At oral argument, counsel for plaintiff argued that defendants were unreasonable in failing to offer daily access for less than the requested four hours per day.  Thus, plaintiff would have this court place on defendants the burden of not only evaluating the reasonableness of an inmate's request but also considering all possible alternatives which the inmate did not request or propose.
We disagree with this position.  If a request is made by an inmate, prison officials are obligated to investigate the reasonableness of that request but are not required to investigate lesser requests

Defendants acted reasonably in denying daily and extended access on weekday afternoons to the sweat lodge. First, the sweat lodge was located near a truck delivery entrance where deliveries were made during business hours Monday through Friday, the precise hours plaintiff requested access to the sweat lodge. The open entrance would have posed a security risk and required defendants to station more guards at the entrance. This would have required defendants to reallocate resources to accommodate the Native Americans. Finally, the inmates were scheduled to work in educational and vocational activities during the requested hours. Daily access to the sweat lodge at the requested time would have been in direct conflict with these scheduled activities. Thus, there was a rational relationship between legitimate penological interests and the denial of plaintiff's request for daily and extended access on weekday afternoons to the sweat lodge.

III. Conclusion

We hold the district court did not err in granting summary judgment in favor of defendants on qualified immunity grounds. Defendants' denial of plaintiff's request for daily and extended access on weekday afternoons to the prison sweat lodge was rationally related to legitimate penological interests.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

which could have been made.