# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3819

_____

| | | |
|---|---|---|
| Kamal K. Patel, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| United States Bureau of Prisons; | * | |
| Linda Sanders, Warden, FCI- | * | |
| Forrest City; Rebecca Lewis, | * | Appeal from the United States |
| Chaplain, FCI-Forrest City; | * | District Court for the |
| Rochelle Cecil, Assistant Food | * | Eastern District of Arkansas. |
| Service Administrator, FCI- | * | |
| Forrest City; Ringwood, First | * | |
| Name Unknown; Chaplain | * | |
| Collier, First Name Unknown; | * | |
| Gregory Thompson, Associate | * | |
| Warden, FCI, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: October 18, 2007
Filed: February 4, 2008

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Inmate Kamal K. Patel brought this lawsuit against the United States Bureau of Prisons ("BOP") and certain prison officials ("Bureau Defendants") at the Federal Correctional Institution in Forrest City, Arkansas ("FCI-Forrest City"). He sought injunctive relief and monetary damages on the grounds that they violated his right to practice his religion by failing to provide him with appropriate meals in compliance with his religious beliefs. The district court[1] granted the defendants' motion for summary judgment on all claims, and Patel appeals. For the reasons discussed below, we affirm.

## I. BACKGROUND

Patel, a Muslim, was a federal inmate at FCI-Forrest City.[2] After his transfer to FCI-Forrest City in 2004, he repeatedly requested dietary accommodations so that he could maintain a particular type of Islamic diet.

"The Bureau provides inmates requesting a religious diet reasonable and equitable opportunity to observe their religious dietary practice within the constraints of budget limitations and the security and orderly running of the institution and the Bureau through a religious diet menu." 28 C.F.R. § 548.20(a). In furtherance of this regulation, Program Statement 4700.04 states:

> 3. Hot Entree Availability. To the extent practicable, a hot entree shall be available to accommodate inmates' religious dietary needs, e.g., Kosher and/or Halal products. Hot entrees shall be offered three times

[1]The Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2]On August 1, 2006, the BOP transferred Patel to its facility in Butner, North Carolina. Patel is incarcerated there as of January 23, 2008. FCI-Forrest City, however, remains Patel's "parent facility."

> a week and shall be purchased precooked, heated in their sealed containers, and served hot. Cooking of any other food items is not permitted in the Common Fare program.

Program Statement 4700.04(3) (emphases omitted). The BOP consulted with various religious leaders, including Muslims, and researched the beliefs and practices of numerous faiths in extensive detail. As a result, the BOP developed a cost-effective plan designed to accommodate all of the estimated thirty-one religious groups represented in the prison system. The BOP offers two meal plans, the "main line" and the "Common Fare." The main line contains a hot bar. Participants in the main line plan may choose a no-flesh/vegetarian option, where inmates self-select vegetarian items from the hot bar. The Common Fare meals are kosher meals. Common Fare participants may not select items from the hot bar, but they may supplement their diets by selecting items from the salad bar or by purchasing items from the commissary.

The BOP decided to serve kosher meals in the Common Fare plan after reviewing the dietary requirements of various religious faiths. It concluded that a kosher meal was the strictest diet and subsumed all other religious dietary needs.[3] Local prisons may not make changes to the Common Fare plan; such changes must occur pursuant to the BOP's direction, not at individual prisons. Program Statement 4700.04(2).

Patel converted to Islam while in prison and now believes that he must consume a *halal* (or "lawful") diet, which prohibits the consumption of pork and other items deemed *haram* (or "unlawful"). Some forms of Islamic dietary restrictions are stricter

---

[3]Pointing to the"Kosher and/or Halal" language in the Program Statement, the parties dispute whether kosher subsumes *halal* or whether the "and/or" may require both kosher and *halal*. In reality, the Program Statement introduces "Kosher and/or Halal" with the indicator "e.g.," meaning that kosher meals, *halal* meals, or both are exemplary, but not the exclusive or mandatory, means by which the prison may accommodate dietary needs.

than others. For instance, some schools of Muslim thought claim that the Qur'an permits the eating of kosher meat that is lawful to Jews, an interpretation of Sura 5:5 ("The food of those who have received the Scripture is lawful for you, and your food is lawful for them."). Patel's belief in a *halal* diet demands the strictest type of ceremonial and cleanliness requirements. His *halal* diet does not allow him to consume any meat unless the animal has been slaughtered during a prayer to Allah. Generally, vegetarian dishes are *halal* unless they have been otherwise contaminated, such as coming into contact with *haram* foods or being cooked or served in containers that have been in contact with *haram* foods without being properly cleaned. Such cross-contamination renders the *halal* foods *haram*.

Patel argues that none of the BOP's meal options meets his religious requirements. First, he claims that the main line option contains no *halal* foods because the vegetarian items available on the main line, which would otherwise be *halal*, have been cross-contaminated by prisoners dropping bacon into the vegetarian items or using their hands to serve themselves. Additionally, Patel claims the pans containing vegetarian items are cross-contaminated from other food preparation and have not been cleaned properly. Second, Patel claims that the Common Fare option is also unsuitable because it usually contains kosher meat entrées (ten of the fourteen dinner meals in a two-week schedule), not *halal* meat entrées. Occasionally the Common Fare entrées are kosher vegetarian entrées (four of the fourteen meals in a two-week schedule), which are also *halal* vegetarian entrées.

Additionally, Patel has the option of purchasing *halal* entrées, which are readily available in the commissary. The Common Fare menu states, "Shelf stabilized meals from the Commissary may be used as a substitute for hot entrees." The commissary sells food to inmates, and inmates who purchase food may substitute those entrées from the commissary for the kosher entrées they would otherwise receive. The prison's commissary provides four *halal* vegetarian entrées that cost between two and three dollars each. The record shows that the commissary carries pasta with garden

vegetables for $2.43, cheese tortellini for $2.70, Florentine lasagna for $2.70, and vegetable stew for $2.94. Patel claims, "[I]f I had to purchase those on a daily basis, I think the cost would be prohibitive."

Patel's administrative requests to the BOP focused on providing *halal* meat entrées as a substitute for kosher meat entrées.[4] He did, however, also make administrative requests for any non-contaminated food options, either *halal* meat or *halal* vegetarian. He also asked that kosher meat entrées be replaced with *halal* vegetarian commissary meals at the BOP's expense, which he would otherwise have to purchase. We note that Patel's second amended complaint requested injunctive relief to "permit him to buy halal food items from commissary," but he obtained a voluntary dismissal of that count. Finally, he asked for the right to visit the hot bar to self-select vegetarian dishes on days when the Common Fare entrée was a kosher meat entrée, even though Common Fare participants were not otherwise allowed to visit the hot bar. This request appears to contradict Patel's earlier allegations regarding the hot bar because Patel previously had complained that the hot bar contained *haram*, cross-contaminated vegetables. Patel argues that this offer was an attempt to compromise and does not reflect accommodation consistent with his true religious beliefs regarding *haram* food. Regardless, the BOP and Bureau Defendants rejected Patel's requests, asserting that their compliance with the Program Statement accommodates all religious dietary needs.

Patel filed a complaint raising a variety of constitutional and statutory claims related to the practice of his Islamic faith, including claims about his inability to

---

[4]According to his complaint and the record developed below, Patel does not contest the contents of the breakfast or lunch fares and refers to "entrées" on appeal, a term that refers consistently to the hot dinner meals listed in the Common Fare menu. Accordingly, we conclude that Patel only contests the kosher meat entrées, which are served at dinner.

obtain a *halal* diet. He brought the claims against the BOP and the Bureau Defendants to whom he had previously complained through the administrative process. As relevant to this appeal, which Patel limited to his *halal* dietary claims, Patel brought a *Bivens*[5] claim based on an alleged violation of the Free Exercise Clause of the First Amendment and statutory claims under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb et seq., and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. He argued that the BOP's meal plan substantially burdened his ability to practice his religion through an appropriate diet. He also brought a *Bivens* claim under the equal protection component of the Due Process Clause of the Fifth Amendment, asserting that the BOP's decision to implement a meal plan that accommodated a kosher diet but not his *halal* diet was discriminatory. Finally, he brought a *Bivens* claim under the Establishment Clause and argued that providing kosher meals in prison amounted to a practice respecting the establishment of the Jewish religion. He sought monetary damages along with injunctive relief. The district court granted the defendants' motion for summary judgment on all claims, and Patel appeals.

## II.    DISCUSSION

We review the district court's summary judgment decision de novo. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Freeman v. Ace Tel. Ass'n*, 467 F.3d 695, 697 (8th Cir. 2006). "[T]he evidence must be such that a reasonable jury could return a verdict for the nonmoving party." *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1094 (8th Cir. 2007) (internal quotation omitted). We view the evidence in the light most favorable to the nonmoving party. *Freeman*, 467 F.3d at 697. "[T]he nonmoving party must

---

[5]*See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007) (internal quotation omitted).

*Bivens* allows for a cause of action for damages against federal officials, not federal agencies, for certain constitutional violations. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."). Accordingly, Patel's *Bivens* claims only extend to the individual Bureau Defendants and not the BOP itself. The statutory claims and claims for injunctive relief, however, still apply to the BOP.

The Bureau Defendants assert that they are entitled to qualified immunity. Qualified immunity extends to *Bivens* actions, *see Butz v. Economou*, 438 U.S. 478, 507 (1978), and, if applicable, immunizes executive officials from a lawsuit, *see Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007). "In addressing . . . qualified immunity, the court must first determine whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." *Hayek*, 488 F.3d at 1054 (quotation omitted). "If the allegations and undisputed facts do not amount to a constitutional violation, there is no necessity for further inquiries concerning qualified immunity." *Id.* As discussed in the remainder of this opinion, we find that Patel has not established any constitutional or statutory violations, and, accordingly, we do not need to engage in further inquiries. Because the underlying claims fail, the district court also did not abuse its discretion in denying injunctive relief. *See Forest Park II v. Hadley*, 408 F.3d 1052, 1060 (8th Cir. 2005).

**A. Free Exercise Clause, RFRA and RLUIPA Claims**

Under the Free Exercise Clause, RFRA and RLUIPA, Patel must first raise a material question of fact regarding whether the BOP has placed a "substantial burden" on his ability to practice his religion. *See Weir v. Nix*, 114 F.3d 817, 820 (1997) (Free

Exercise Clause); 42 U.S.C. § 2000bb-1(a) (RFRA); 42 U.S.C. § 2000cc-1(a) (RLUIPA).[6] Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from RFRA and RLUIPA, *see, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005), but we need not reach that issue because we conclude Patel has not put forth sufficient evidence that a reasonable jury could conclude that his ability to practice his religion has been substantially burdened.

> Substantially burdening one's free exercise of religion means that the regulation
>
> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (quotation and alterations omitted). When the significance of a religious belief is not at issue, the same definition of "substantial burden" applies under the Free Exercise Clause, RFRA and RLUIPA. *See id.*[7] Courts generally have found that no "substantial burden" exists if the regulation merely makes the practice of a religious belief more expensive. *See Braunfeld v. Brown*, 366 U.S. 599, 605 (1961) (plurality opinion) (holding that

---

[6]We have never found a *Bivens* action to extend to a Free Exercise claim, and it is doubtful that we would do so. *See Malesko*, 534 U.S. at 68. Nevertheless, we will assume without deciding that a *Bivens* action exists for a Free Exercise claim.

[7]We note that portions of this definition requiring religious beliefs to be a "central tenet" or "fundamental" may not apply to a RLUIPA claim, but we do not reach the issue because the parties do not contest the sincerity of Patel's religious beliefs or the significance of his dietary requests to his faith. *See* 42 U.S.C. § 2000cc-5(7)(A) (defining religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief").

a law that "operates so as to make the practice of . . . religious beliefs more expensive" did not sufficiently burden plaintiffs under the Free Exercise Clause); *Donovan v. Tony & Susan Alamo Found.*, 722 F.2d 397, 403 (8th Cir. 1983) (concluding that "legislation otherwise legitimate does not violate the Free Exercise Clause merely because financial detriment results"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 n.11 (11th Cir. 2004) (acknowledging that the economic reality of the marketplace does not constitute a substantial burden under RLUIPA); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003) (requiring more expensive building guidelines did not impose a substantial burden on a church under RLUIPA); *Goodall by Goodall v. Stafford County Sch. Bd.*, 60 F.3d 168, 172 (4th Cir. 1995) (placing economic burden of purchasing speech services for a student attending a private school did not impose a substantial burden on plaintiffs under RFRA).

Patel argues that the alternative means by which he may practice his Muslim faith through dietary accommodation offered by the BOP are inadequate. He could self-select a vegetarian diet from the hot bar, but he claims that the food is cross-contaminated. He could supplement the Common Fare meals from the salad bar, but he claims that the food and serving pans are also cross-contaminated. He could consume the Common Fare meals, but he would be forced to refrain from consuming kosher meat entrées, which make up ten of the fourteen dinner meals every two weeks and which he claims do not satisfy his stricter *halal* requirements.[8]

---

[8]Other courts have concluded that a lack of access to *halal* meat does not constitute a substantial burden under RLUIPA. *See, e.g.*, *Boyd v. Lehman*, 2006 WL 1442201, at \*10 (W.D. Wash. 2006) ("The ovo-lacto vegetarian diet which is provided to plaintiff does not require him to eat foods which are forbidden by his religion, it simply denies him one component of the diet which he contends should be provided."). Here, however, Patel seeks a *halal* diet consisting of either *halal* meat or *halal* vegetarian entrées, not just *halal* meat.

Patel also has the option of purchasing *halal* vegetarian entrées from the commissary and substituting them for kosher meat entrées on days meat is served at dinner. Patel claims, "[I]f I had to purchase those meals on a daily basis, I think the cost would be prohibitive." He, however, provides no financial information to support his claim. Patel would not need to purchase meals "on a daily basis," but on the five days each week when a kosher meat entrée, not a kosher and *halal* vegetarian entrée, is served. While this option places a financial burden upon him, Patel has not shown that it is substantial. He only offers his single, vague and unsupported statement about the potential cost, and the record offers no evidence regarding Patel's financial status.[9] Requiring him to purchase commissary meals does not significantly inhibit, meaningfully curtail, or deny Patel a reasonable opportunity to practice his religion. Patel has not offered sufficient evidence to create a genuine issue of material fact sufficient for a jury to find that his ability to practice his religion has been substantially burdened.

Patel relies upon our decision in *Love v. Reed*, 216 F.3d 682 (8th Cir. 2000), which found that the prison placed a substantial burden upon inmate Love's ability to practice his religion based on the prison's refusal to allow Love to store food in his cell. In that case, Love converted to the "Hebrew religion," which required strict Sabbath observance. *Id.* at 685–86. His beliefs prevented him from eating food prepared by others or receiving food from others on the Sabbath. *Id.* at 686. The prison refused to allow him to store peanut butter and bread from the kitchen in his cell, which he claimed would allow him properly to observe the Sabbath. *Id.* The

---

[9]To the extent it can be considered a part of the record, Patel's partially-completed application to proceed in forma pauperis before the district court in 2004 indicated that his prison account balance averaged $57.79 during the six months preceding the application, and Patel noted that he received money from his employment and from gifts from family members. His inmate account reflects that he has received and spent money regularly during his term of imprisonment. On the application, Patel failed to indicate whether or not he possessed any money or valuable property apart from his prison account.

-10-

prison argued that Love could purchase food from the commissary. The district court concluded that the prison had violated Love's rights under the Free Exercise Clause. *Id.* It found that Love proved that he was indigent and, in any event, that any money he did receive must be used to purchase food from the commissary first, requiring Love to "exhaust alternative means of observing the Sabbath before seeking an accommodation." *Id.* at 689.

On appeal, we agreed that Love's indigency would mean that the dietary restrictions placed a substantial burden upon his ability to practice his religion and that the prison must accommodate him but only after he "exhaust[ed] alternative means." *Id.* at 689–90. In this case, however, Patel neither pleads nor provides any evidence that he is indigent. Additionally, Love was required to purchase meals from the commissary with his own funds if he were able in order to exhaust alternative means. *Id.* at 689. Patel does not offer to purchase meals from the commissary but instead demands that he receive meals from the commissary at the BOP's expense, regardless of whether he is able to purchase them.

Furthermore, the record does not reflect that Patel has exhausted alternative means of accommodating his religious dietary needs. For instance, Patel complains that he has observed prisoners dropping food into the vegetarian dishes on the hot bar, but he could simply request to be first in line to avoid prisoner cross-contamination concerns. The record does not indicate whether Patel requested or would be allowed to store *halal* food from the kitchen in his cell, such as peanut butter and bread, so that he could have a *halal* meal on days that kosher meat entrées are served. Also, Patel does not address why less expensive food items available at the commissary, such as beans, rice, tortillas, cheese, oatmeal, and peanut butter, could not serve as a substitute for the kosher meat entrées. He only claims that *halal* entrées from the commissary might be cost prohibitive but does not argue that purchasing less expensive but religiously acceptable food items would be. Finally, the Ninth Circuit has suggested that an alternative means of pursuing a *halal* diet may exist in finding "an outside

religious organization" to provide *halal* meals. *Watkins v. Shabazz*, 180 Fed. Appx. 773, 775 (9th Cir. 2006) (unpublished memorandum). Therefore, we conclude that Patel has not presented sufficient evidence from which a reasonable factfinder could conclude that his right to exercise his religion was substantially burdened, and summary judgment was appropriate.[10]

## B. Equal Protection Claim

Patel also brings a *Bivens* claim for a Fifth Amendment equal protection violation. *See Davis v. Passman*, 442 U.S. 228 (1979). In order to establish such an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a "fundamental right." *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006), *cert. denied*, 550 U.S. ---, 127 S. Ct. 2128 (2007); *Weiler v. Purkett*, 137 F.3d 1047, 1052 (8th Cir. 1998). Religion is a suspect classification. *Weems*, 453 F.3d at 1016. Patel must show that the decision to serve kosher entrées but not *halal* entrées was motivated by intentional or purposeful discrimination. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003). "Nevertheless, prison officials may restrict the religious practices of inmates only if such deprivation is necessary to further legitimate penological interests." *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999); *see also Thomas v. Gunter*, 103 F.3d 700, 703 (8th Cir. 1997).

---

[10]Of course, even if we were to conclude that the appellees substantially burdened Patel's right to exercise his religion, they could show that they had a compelling interest achieved by the least restrictive means under RFRA and RLUIPA, or that the burden was reasonably related to legitimate penological objectives under the Free Exercise Clause pursuant to the balancing test in *Turner v. Safley*, 482 U.S. 78 (1987). We do not reach those issues here.

Even assuming that Patel has been treated differently from similarly-situated inmates, Patel has not presented any evidence suggesting that the Bureau Defendants acted with a discriminatory purpose. To the contrary, the undisputed evidence shows that the BOP consulted with religious leaders, including Muslims, and reasonably believed that it had accommodated the needs of a *halal* diet. If anything, the evidence supports only one conclusion: that the Bureau Defendants' intention was to accommodate all religious beliefs, not to discriminate against certain beliefs.[11]

Patel asserts that the Bureau Defendants offered "changing excuses" for refusing Patel's requests, which supports a finding of "intentional discrimination." We find no change in the Bureau Defendants' position. They consistently asserted that they complied with prison policy in providing Patel with kosher meals. Later, when prompted during litigation, the Bureau Defendants also cited security concerns and budgetary constraints as reasons not to offer a separate *halal* food meal plan in the main line or to offer *halal* entrées from the commissary at the BOP's expense. In an interrogatory, the Bureau Defendants stated that substituting kosher entrées with *halal* entrées would not pose a security risk, which is consistent with the prison's policy to permit *halal* meals that inmates purchase from the commissary to replace kosher meals. We find no basis for construing these statements as "intentional discrimination." Accordingly, viewing the facts in the light most favorable to Patel, we conclude that he has not put forth sufficient evidence to raise a material question of fact as to whether the defendants intentionally discriminated against him and that summary judgment was appropriate.

---

[11]We also note that the Bureau Defendants did not have the authority to alter the meal plans established by the BOP.

## C. Establishment Clause Claim

The district court did not directly address Patel's Establishment Clause claim, but we conclude that Patel does not have Article III standing to bring this claim. "The requisite elements of Article III standing are well established: A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. ---, 127 S.Ct. 2553, 2562 (2007) (internal quotation omitted). Injury may be established in two ways. First, a plaintiff may have standing as a taxpayer under *Flast v. Cohen*, 392 U.S. 83, 105–06 (1968), but Patel does not allege that he is a taxpayer. Second, we have found standing for a plaintiff who establishes an injury of "direct and unwelcome personal contact with the alleged establishment of religion." *ACLU Neb. Found. v. City of Plattsmouth*, 358 F.3d 1020, 1029–30 (8th Cir. 2004), *adopted en banc*, 419 F.3d 772, 775 n.4 (8th Cir. 2005). Prisoners may establish an injury if they "allege they altered their behavior and had direct, offensive, and alienating contact with" a government-funded religious program. *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, No. 06-2741, --- F.3d ---, 2007 WL 4225236, at *7 (8th Cir. Dec. 3, 2007).

Patel's complaint alleges that the Bureau Defendants "singled out the Jewish faith as the only faith to whom a religious diet was to be provided and singling out such faith as the only faith for whom provisions would be made for religious holidays constituted discrimination and violated the Establishment Clause's prohibition." Nowhere does he allege that he altered his behavior or had direct, offensive and alienating contact as a result of the accommodation of Jewish religious beliefs in the prison. To the contrary, the remainder of Patel's complaint reflects only Patel's affirmative request that the prison accommodate his religious beliefs. A successful Establishment Clause claim would strike down any accommodation of religious beliefs in the prison's meal plans, which would effectively eviscerate the remedy Patel seeks in his complaint. Absent an alleged injury, Patel does not have standing for his

Establishment Clause claim.[12]  As a result, we dismiss this claim for lack of jurisdiction.

## III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[12]Even if we were to find that Patel has standing, under the three familiar prongs of the test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), *see United States v. Corum*, 362 F.3d 489, 495–96 (8th Cir. 2004), summary judgment was appropriate. *See Murphy*, 372 F.3d at 985 (rejecting claim that the prison's choice to show religious television programming that favored particular religious beliefs violated the Establishment Clause).