[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14943
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 21, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-00193-CV-4-WS-WCS

AKEEM MUHAMMAD,

Plaintiff-Appellant,

versus

GEORGE SAPP,
FRANCHETTA BARBER,
WALTER MCNEIL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 21, 2010)

Before EDMONDSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Akeem Muhammad, a Florida state prisoner and an Orthodox Sunni Muslim, appeals the district court's grant of summary judgment in favor of the defendants on his pro se complaint filed under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.

I.

Muhammad is serving a life sentence in the Florida Department of Corrections. He brought a § 1983 action against FDOC officials, in both their individual and official capacities, alleging that the defendants violated his First and Fourteenth Amendment rights by failing to provide him with certain religious accommodations in prison. Muhammad also asserted claims against the defendants under the Religious Land Use and Institutionalized Persons Act. The district court granted summary judgment in favor of the defendants on all of Muhammad's claims, and he now appeals.

Muhammad contends: (1) that the district court erred in granting summary judgment on his RLUIPA claims; (2) that the district court erred in concluding that the defendants were entitled to qualified immunity on his First and Fourteenth Amendment individual capacity claims; (3) that the district court erred in finding that his request for injunctive relief on his Fourteenth Amendment official capacity claim was moot; (4) that the district court abused its discretion in denying his

motion requesting that the court interview a dentist on his behalf; and (5) that the district court abused its discretion in denying his motion for recusal of the magistrate judge assigned to his case.

## II.

In his third amended complaint, Muhammad alleged that the defendants violated his rights under the Religious Land Use and Institutionalized Persons Act by (1) requiring him to wear a uniform consisting of a close fitting shirt and pant instead of a quamees or saraawell; (2) requiring him to tuck in his shirt; (3) refusing to let him have a Qibla compass; (4) requiring him to shower outside of his cell in stalls where he could be seen by other inmates and prison officials; (5) refusing to allow him to have 16 gold crowns removed from his teeth at his expense; and (6) refusing to provide him with a requested diet. The district court granted summary judgment in favor of the defendants on all six RLUIPA claims. Muhammad contends that was error.

"We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Smith v. Allen, 502 F.3d 1255, 1265 (11th Cir. 2007). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c)(2). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Smith, 502 F.3d at 1265 (quotation marks and ellipsis omitted). The non-moving party cannot oppose a "properly made and supported" summary judgment motion by relying "merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). Moreover, while "[a]ll reasonable inferences arising from the evidence must be resolved in favor of the non-movant, [ ] inferences based upon speculation are not reasonable." Marshall v. City of Cape Coral, Fla., 797 F.2d 1555, 1559 (11th Cir. 1986). "[W]e may affirm the district court's decision on any adequate ground, even if it is other than the one on which the court actually relied." Smith, 502 F.3d at 1265 (quotation marks omitted).

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government can show that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); see also Smith, 502

4

F.3d at 1266 ("[S]ection 3 affords confined persons 'greater protection of religious exercise than what the Constitution . . . affords'" because the Constitution requires only a showing of a legitimate governmental interest.).

To establish a prima facie case under Section 3, a plaintiff must show: (1) that he engaged in a religious exercise, and (2) that the religious exercise was substantially burdened by a government practice. See id. at 1276. "The plaintiff bears the burden of persuasion on whether the government practice that is challenged by the claim substantially burdens the exercise of religion." See id. (quotation marks, alteration, and ellipsis omitted). If the plaintiff establishes a prima facie case, the government must show that the challenged government practice is "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." Id. (quoting 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b)). Context matters in the application of the compelling governmental interest standard. Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S.Ct. 2113, 2123 (2005). The standard is applied with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Id.

A.

5

The Florida Department of Corrections requires inmates to wear, both inside and outside of their cell, a uniform that consists of a close fitting shirt and pant. Inmates are also required to tuck in their shirt. The clothing restrictions further the compelling governmental interest of maintaining prison security. The FDOC submitted an affidavit establishing that the uniform and requirement that an inmate tuck in his shirt enables correctional officers to detect whether an inmate is concealing weapons, contraband, or other prohibited items on his person. The FDOC's interest in maintaining prison security is not lessened when a inmate is inside his cell. The prison's policy is the least restrictive means of furthering that compelling governmental interest because permitting inmates to wear clothing of their choosing inside their cells would undermine the safety of prison officials and other inmates. See Fegans v. Norris, 537 F.3d 897, 906 (8th Cir. 2008) (policy prohibiting inmates from wearing beards did not violate RLUIPA because safety and security concerns were a compelling governmental interest and the policy was the least restrictive means available to further that interest). The district court did not err in granting the defendants' summary judgment motion on Muhammad's claims relating to his clothing.

B.

As for the Qibla compass, in opposition to defendants' summary judgment

motion, Muhammad submitted an affidavit establishing that the compass was not "mandatory" for a Muslim inmate but rather was "permissible and a useful item to have." "[T]o constitute a 'substantial burden' on religious practice, the government's action must be 'more than . . . incidental' and 'must place more than an inconvenience on religious exercise.'" Smith, 502 F.3d at 1277. Muhammad offered no evidence establishing that a Qibla compass was fundamental to his practice of Islam or would cause any more than a "inconvenience on [his] religious exercise." See id. Because he failed to show that the deprivation of a Qibla compass substantially burdened the exercise of his religion, the district court did not err in granting summary judgment on that claim.[1] See id. at 1276 ("[I]f the plaintiff fails to present evidence to support a prima facie case under RLUIPA, the court need not inquire into whether the governmental interest at state was compelling.").

C.

The defendants were also entitled to summary judgment on Muhammad's claim challenging the FDOC's policy requiring inmates to shower outside of their

---

[1]The district court granted summary judgment in favor of the defendants on the grounds that the FDOC had a compelling interest in restricting the items in a prisoner's cell so that the cell could be quickly searched. "[W]e may affirm the district court's decision on any adequate ground, even if it is other than the one on which the court actually relied." Smith, 502 F.3d at 1265 (quotation marks omitted).

7

cells in view of other inmates and prison officials. The FDOC has a compelling governmental interest in promoting sanitary conditions inside its prisons. The defendants' established that requiring inmates to take "complete showers" in stalls was the least restrictive means of furthering that interest. The FDOC's policy of requiring inmates to shower in view of prison officials promotes its compelling governmental interest in maintaining prison security. Accordingly, Muhammad's shower claim fails.

D.

Summary judgment was also appropriate on Muhammad's claim regarding the removal of his 16 gold crowns. The FDOC's policy of limiting inmates' dental procedures to those that are medically necessary furthers the compelling governmental interest of cost containment. The defendants' submitted an affidavit establishing that removing the crowns would require at least 10 dentist visits and would involve a "full mouth rehabilitation." See Abdulhaseeb v. Calbone, 600 F.3d 1301, 1320 (10th Cir. 2010) (noting that "RLUIPA requires governments to refrain from substantially burdening religion, not to affirmatively subsidize religion"). Although Muhammad asserted that his friends and family would pay for the procedures, he offered no evidence in support of that assertion other than his own conclusory affidavit. See Marshall, 797 F.2d at 1559 ("All reasonable

8

inferences arising from the evidence must be resolved in favor of the non-movant, but inferences based upon speculation are not reasonable."). Summary judgment on that claim was proper.

E.

The FDOC was also entitled to summary judgment on Muhammad's RLUIPA claim regarding his diet. He asked for an alcohol-free lacto-vegetarian diet "prepared with and served on non-disposable utensils" that had never come into contact with meat or alcohol products or byproducts. He also asked that his meals not be prepared near meals containing meat or alcohol because of the contamination risk. The expense of complying with Muhammad's dietary requests justified the FDOC's denial of them. The FDOC submitted affidavits establishing that its policy of providing alternative entree meals and vegan meals was the least restrictive means of furthering its compelling governmental interest in cost containment. See Jova v. Smith, 582 F.3d 410, 417 (2d Cir. 2009) (concluding that the administrative burden justified prison officials' refusal to provide the plaintiff with specific foods, on specific days of the week, that were prepared by members of the plaintiff's faith); Baranowski v. Hart, 486 F.3d 112, 125–26 (5th Cir. 2007) (holding that budgetary and security concerns were a compelling governmental interest justifying the failure to provide kosher meals to a Jewish inmate).

9

Muhammad also challenges the district court's denial of his cross motion for summary judgment and requests for nominal and punitive damages. Because the defendants were entitled to summary judgment on his RLUIPA claims, those challenges are moot.

II.

Muhammad asserted individual capacity claims against the defendants, alleging violations of his First and Fourteenth Amendments rights. The district court granted summary judgment for the defendants on those claims, concluding that they were entitled to qualified immunity. Muhammad contends that was error. We review de novo a district court's grant of a summary judgment motion based on qualified immunity. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). "[I]n so doing, we resolve all issues of material fact in favor of the plaintiff." Oliver v. Fiorino, 586 F.3d 898, 901 (11th Cir. 2009). And, we view the facts in the light most favorable to the plaintiff because "the issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain facts showed a violation of clearly established law." Id. (quotation marks omitted).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly

10

established statutory or constitutional rights of which a reasonable person would have known." Kingsland v. City of Miami, 382 F.3d 1220, 1231 (11th Cir. 2004) (quotations marks omitted). "To receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." Oliver, 586 F.3d at 905 (quotation marks and alteration omitted). "If the official was acting within the scope of his discretionary authority"–and it is undisputed that the defendants in this case were—"the burden shifts to the plaintiff to show that the grant of qualified immunity is inappropriate. Id.

We must grant qualified immunity to the government official unless the plaintiff can show "that the facts when viewed in the light most favorable to the plaintiff establish a constitutional violation" and "that the illegality of the [government official's] actions was 'clearly established' at the time of the incident." Id. After Pearson v. Callahan, __ U.S.__, 129 S.Ct. 808, 818 (2009), we are no longer required to conduct the qualified immunity analysis in the sequence specified in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001). See Oliver, 586 F.3d at 905. Instead, we may now exercise our sound discretion to decide which prong of the inquiry to address first. See Pearson, __U.S. at __, 129 S.Ct. at 818.

A.

11

Muhammad contends that the defendants violated the Free Exercise Clause of the First Amendment by failing to provide him with his requested Islamic dietary accommodations. We begin our qualified immunity analysis by addressing the second prong—whether the defendants violated a clearly established constitutional right. See Oliver, 586 F.3d at 905. "In order to determine whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, this Court's precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances." Id., 586 F.3d at 907. If there is no precedent on point, a right is clearly established only if the law has "earlier been developed in such [a] concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Crawford v. Carroll, 529 F.3d 961, 977–78 (11th Cir. 2008) (quotation marks omitted). "Qualified immunity affords protection to all but the plainly incompetent or those who knowingly violate the law." Id. at 978 (quotation marks omitted). "We have noted that '[i]f the law does not put the [official] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.' " See Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156–57 (2001)).

We addressed a prisoner's First Amendment challenge to a prison's dietary regulations in Martinelli v. Dugger, 817 F.2d 1499 (11th Cir. 1986), abrogation recognized by Harris v. Chapman, 97 F.3d 499, 503 (11th Cir. 1996). In that case, an inmate brought a § 1983 action against corrections officials. He argued that the prison's refusal to honor his request for a full kosher diet infringed upon his First Amendment rights. Id. at 1501. Applying the "least restrictive means" test, we concluded that the prison's dietary regulations were "rationally related to the goal of avoiding excessive administrative expense" because the defendants presented evidence that providing full kosher meals would be too costly. Id. at 1506–07 & 1506 n.25. After this Court decided Martinelli, the Supreme Court held that "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test"—not the more stringent least restrictive means test that we had applied. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S. Ct. 2400, 2404 (1987). (explaining that the reasonableness test was necessary "[t]o ensure that courts afford appropriate deference to prison officials").

The FDOC submitted an affidavit establishing that complying with Muhammad's dietary requests was too costly because it would require the operation of special kitchens or food preparation facilities. Under those circumstances and in light of Martinelli, we cannot say that it would be it obvious

13

to all reasonable correctional officials that denying Muhammad's dietary request violated federal law. See Crawford, 529 F.3d at 977–78. Accordingly, we conclude that the defendants were entitled to qualified immunity on that claim.

B.

Muhammad also asserted a claim against the defendants in their individual capacities, alleging that they violated the Equal Protection Clause of the Fourteenth Amendment by providing Jewish inmates with a kosher diet and not providing Muslim inmates with a Halal diet. The district court concluded that the defendants were entitled to qualified immunity. On this claim, we begin with the first prong—whether viewing the facts in the light most favorable to Muhammad, he established a constitutional violation. See Oliver, 586 F.3d at 905.

To establish an equal protection claim, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and [that] (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Sec'y Dep't of Corr., 467 F.3d 1311, 1318–19 (11th Cir. 2006); see also Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (noting that "the equal protection clause prohibits only intentional discrimination."). Muhammad alleged only that the defendants provided kosher

14

meals to Jewish inmates but did not provide halal meals to Muslim inmates. That allegation only goes to the first equal protection requirement. Because the facts viewed in the light most favorable to Muhammad do not establish that the prison's decision to serve kosher meals but not halal meals was the product of intentional discrimination, the district court did not err in finding that the defendants were entitled to qualified immunity. See Patel v. U.S. Bureau of Prison, 515 F.3d 807, 815–16 (8th Cir. 2008) (concluding that prisoner's equal protection claim failed because he had not shown that the prison's decision to serve kosher entrees and not halal entrees was motivated by intentional or purposeful discrimination).

On his equal protection claim, Muhammad also sued the defendants in their official capacities and sought declaratory, injunctive, and monetary relief. The district court granted summary judgment for the defendants, concluding that the claim was moot because the prison no longer served kosher meals to Jewish inmates. We do not need to address the mootness issue because Muhammad failed to establish an equal protection violation.

IV.

Muhammad also contends that the district court erred in denying his request for the court to interview Dr. Courten, a dentist. We review that decision only for an abuse of discretion. See Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d

15

1274, 1286 (11th Cir. 2003) ("[W]e will not overturn discovery rulings 'unless it is shown that the District Court's ruling resulted in substantial harm to the appellants case." ); Carpenter v. Mohawk Indus., Inc., 541 F.3d 1048, 1055 (11th Cir. 2008) ("A clear error of judgment or application of an incorrect legal standard is an abuse of discretion.").

Muhammad asserts that Dr. Courten would have told the court that the gold crowns on his teeth could be removed in 8 hours and without a full mouth rehabilitation. He argues that he suffered substantial harm from the district court's denial of his motion since the court granted summary judgment on his gold crown RLUIPA claim because the FDOC's evidence was not refuted. The district court's denial of Muhammad's motion was not an abuse of discretion. Even if Dr. Courten had testified as Muhammad says that he would have, Muhammad still presented no evidence that the procedure was medically necessary and offered no evidence beyond his own conclusory statements that anyone would give him money to pay for the procedure.

V.

Finally, Muhammad contends that the district court erred in denying his motion for recusal of the magistrate judge. We review a denial of a motion for recusal for abuse of discretion. In re Walker, 532 F.3d 1304, 1308 (11th Cir.

16

2008). A magistrate judge is required to disqualify himself if "his impartiality might reasonably be questioned" or "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1). "The standard is whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." Walker, 532 F.3d at 1310 (quotation marks omitted). The magistrate judge's direction to the defendants "to be prepared to explain to [the district court] why [Muhammad's case] was litigated differently on summary judgment" from an earlier case that the magistrate judge had handled did not raise significant doubt about his impartiality. The fact that the magistrate judge informed both parties that factually similar case law existed does not indicate bias. Muhammad has presented no evidence at all of bias, and the district court did not abuse its discretion in denying his recusal motion.

**AFFIRMED.**