**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-6320**

ANTHONY WRIGHT,

　　　　　Plaintiff – Appellant,

　　v.

KENNETH E. LASSITER; CARLTON B. JOYNER; BETTY BROWN; R. SPEER; TERRI C. STRATTON,

　　　　　Defendants – Appellees,

　　and

VAN MCCULLOUGH; B. VINES,

　　　　　Defendants.

------------------------------

AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA LEGAL FOUNDATION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION,

　　　　　Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:13-ct-03245-D)

Argued:  January 29, 2019　　　　　　　　　　Decided:  April 17, 2019

Before KING, DIAZ, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Richardson wrote the opinion, in which Judge King and Judge Diaz concurred.

––––––––––––––––––

**ARGUED:** Michele Luecking-Sunman, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant. Ryan Y. Park, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Daniel K. Siegel, Taittiona Miles, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant. Joshua H. Stein, Attorney General, Matthew W. Sawchak, Solicitor General, Yvonne Ricci, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. Irena Como, Christopher Brook, AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA LEGAL FOUNDATION, Raleigh, North Carolina; Daniel Mach, Heather L. Weaver, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, Washington, D.C., for Amici Curiae.

RICHARDSON, Circuit Judge:

Anthony Wright, serving a life sentence for murder in North Carolina, adheres to the Ba Beta Kristiyan sect of Rastafarianism. He requested permission to celebrate four annual Rastafarian "holy days" through communal feasts that include goat, fish, rice, plantains, and wine, as well as three annual "holidays" through communal gatherings that do not include feasts. He claims that the Defendants, North Carolina prison officials, imposed a substantial burden on his religious exercise by refusing his request. He brings his claims under both the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, and the First Amendment. After a bench trial, the district court found for the Defendants.

We affirm, though for a different reason than the ones given by the district court. Wright's claims suffer from a causation problem. He must prove that the Defendants' policies caused a substantial burden on his exercise of religion. That is, he must show that, but for the Defendants' policies, a community of Rastafarian inmates would gather to celebrate these seven holidays and holy days. But Wright has not identified *any* Rastafarian inmate in the North Carolina prison system who would attend his proposed gatherings. And he now concedes that his beliefs about how to celebrate these holidays are idiosyncratic to Ba Beta Kristiyan and that there are no other North Carolina inmates who belong to that sect. Thus, he has failed to show that the Defendants' policies are what prevent these communal gatherings from happening. Because Wright failed to prove this critical element of his claim at trial, we affirm the judgment for the Defendants.

3

# I.

Rastafarians believe in the divinity of Ethiopian Emperor Haile Selassie I, who before his coronation was known as Ras Tafari. Despite that common belief, Rastafarianism—like many other religions—is divided into sects. These sects are often called "mansions." One of the newer mansions is Ba Beta Kristiyan, which was founded in the 1980s by Abuna Ammanuel Foxe. Foxe served for many years as the Rastafarian chaplain for the New York prison system. During that time, Ba Beta Kristiyan spread among New York prison inmates.

One of those inmates was Wright. In 2003, while incarcerated in New York, Wright was inducted into Ba Beta Kristiyan by one of Foxe's disciples, Ralph Severin. After his release from prison in New York, Wright moved to North Carolina in 2009. Because there is no organized Ba Beta Kristiyan church in North Carolina, he practiced his religion at home. Only a few months after moving to North Carolina, Wright was arrested for murder. He was convicted and sentenced to life imprisonment without parole, a sentence he began serving at North Carolina's Central Prison.

While at Central Prison, Wright continued to practice Rastafarianism. In 2013, prison officials designated him a "faith helper" who helped lead weekly Rastafarian gatherings. Attendance at the weekly gatherings varied. Records for the year 2016 show that as many as thirteen inmates and as few as three sometimes attended. On some weeks, the gatherings had to be cancelled because no one showed up. In 2014, prison officials, at the request of Wright and other Rastafarian inmates, permitted a special Rastafarian religious observance on August 17.

4

The impetus for this case was a request for religious accommodations that Wright made in 2012. While the request was somewhat unclear, it mentioned "holy days" and attached a printout of a Ba Beta Kristiyan webpage listing three "holidays" (January 7, July 16, and September 11) and four "holy days" (May 5, July 23, October 7, and November 2). J.A. 19–22. The printout explained that most of the holy days are celebrated with various food and drink, such as vegetables, rice, fish, and wine. *Id.* Wright followed up with written grievances, one of which explained that these days are "Solemn for the Rastafarian Community Worldwide." J.A. 24. North Carolina prison officials denied Wright's request, concluding that his beliefs about these holidays and holy days were particular to the Ba Beta Kristiyan mansion and not generally shared by Rastafarians.

Wright then filed a *pro se* complaint in the Eastern District of North Carolina requesting "Acknowledgment of the Holy days and holidays to Celebrate these days with a Feast," as well as $19,500 in damages. J.A. 17. The district court granted summary judgment for the Defendants, ruling that there was no substantial burden on Wright's religious exercise because the prison already provided him a reasonable opportunity for religious worship through the weekly gatherings and other accommodations. We disagreed and sent the case back, explaining the district court had erred by considering Wright's ability "to engage in other forms of religious exercise" in finding no substantial burden. *Wright v. Lassiter*, 633 F. App'x 150, 151 (4th Cir. 2016) (quoting *Holt v. Hobbs*, 135 S. Ct. 835, 862 (2015)).

5

On remand, the Defendants again moved for summary judgment, which the district court granted in part. The district court rejected Wright's claims insofar as he requested that *non*-Rastafarian inmates be allowed to attend his proposed holiday and holy-day gatherings. Wright does not challenge that ruling on appeal. Reply Brief of Appellant at 19 n.8. The district court denied summary judgment, however, on Wright's request for gatherings with other Rastafarian inmates, concluding that there were genuine issues of material fact going to whether the Defendants had imposed a substantial burden on Wright's religious exercise and whether the government's interests justified that burden. Because Wright was still proceeding *pro se*, the district court asked North Carolina Prisoner Legal Services to represent him at trial, which it agreed to do.

The district court held a one-day bench trial on Wright's claims. Wright testified about his religious beliefs. He described the seven holidays and holy days, which he said were "the core holidays of all the mansions of Rastafarian[ism]." J.A. 265. He explained that his faith required celebrating these communal gatherings and feasts in "a church setting." J.A. 253. Severin, who had inducted Wright into the Ba Beta Kristiyan mansion, testified as "an expert in the study and practice of Rastafarianism." J.A. 281. Like Wright, Severin explained the significance of these gatherings and stated that "all Rastafarians celebrate" the four holy days. J.A. 290. Wright did not, however, call as a witness any other Rastafarian inmate who joined in his requests.

Wright also introduced testimony about his request for religious feasts. He testified holy-day services are followed by a communal meal with food items such as "chicken, fish, I believe goat, rice, corn and plantains and stuff like that." J.A. 218.

6

Severin similarly identified these items as "goats, chicken, fish, rice, salad." J.A. 286. Wright introduced evidence that the prison had permitted communal religious meals for a few other religious groups: a Muslim inmate, for example, testified about communal Eid al-Fitr meals. At summation, however, Wright's counsel explained that he did not expect the prison "to fully fund the holy days with a meal." J.A. 444. And his counsel also conceded that there were no outside Rastafarian volunteers willing to provide meals of goat, fish, rice, plantains, and wine. Instead, Wright now sought permission for fundraising that would allow inmates to pay for the meals. Or, his counsel argued, the prison could permit separate gatherings for Rastafarians where they could eat from "the regular food tray." *Id.*

In response to Wright's evidence, the Defendants described the accommodations the prison had made for Rastafarian religious practices. Their witnesses pointed to the weekly Rastafarian services and testified that Wright could always share a meal with other Rastafarians from his housing unit at regular mealtimes in the dining hall. The Defendants also called an expert witness, University of North Carolina anthropology professor Dr. Charles Price, a practicing Rastafarian who has authored scholarly books and articles on the religion. Dr. Price testified that Wright's beliefs about how to celebrate these holidays were specific to the Ba Beta Kristiyan mansion. In particular, other Rastafarians do not hold "feasts." Nor do all Rastafarians celebrate all seven holidays and holy days. Moreover, most Rastafarians are vegetarian, and Dr. Price testified that he "would be run off" if he showed up at a Rastafarian gathering with a bottle of wine. J.A. 339. In Dr. Price's opinion, Central Prison's existing

7

accommodations were adequate for Rastafarians (or at least, for those not belonging to Ba Beta Kristiyan).

The Defendants' witnesses also testified that granting Wright's requests would impose burdens on the prison. The witnesses testified to the substantial personnel costs required to oversee the gatherings, as well as the cost of the requested food. One estimated that, if the prison system bore the full costs of staffing and providing food for the four holy-day gatherings for all Rastafarian inmates statewide, those costs would total $587,193.60 per year. What is more, the Defendants' witnesses described how these gatherings could cause security problems by diverting staff from other important tasks and by giving inmates the opportunity to start fights and obtain contraband.

After hearing this testimony, the district court ruled for the Defendants. The district court concluded that, because the Defendants had already accommodated Wright's requests to a significant degree and because limited staff and funds prevented other accommodations, there was no substantial burden on Wright's exercise of religion. The district court alternatively found that, under both RLUIPA and the First Amendment, the government's interests "in avoiding excessive logistical problems, costs, and security concerns" justified any burden on Wright's exercise of religion. J.A. 832–33.

Wright timely appeals. We review the district court's factual findings for clear error and its legal conclusions de novo. *Virginia Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 654 (4th Cir. 2017).

8

II.

Because the evidence at trial failed to show that prison officials *imposed* a substantial burden on Wright's religious exercise, we affirm the district court's judgment for the Defendants.

Wright brings his free-exercise claims under RLUIPA and the First Amendment. Such claims proceed in two stages. At the first stage, which is essentially the same for both claims, the plaintiff must show that the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs. *See Carter v. Fleming*, 879 F.3d 132, 139–40 (4th Cir. 2018). If the plaintiff can make that showing, we proceed to the second stage, asking whether the prison's policies are justified despite the burden they impose. The standards governing this second stage diverge for RLUIPA and First Amendment claims. Under RLUIPA, the government has the burden to show that its policies satisfy strict scrutiny: that is, the policies must represent the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). Under the First Amendment, the plaintiff has the burden to show that the policies at issue are not "reasonably related to legitimate penological interests." *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

We agree with Wright that the district court committed legal error by confusing these two stages of the analysis. In finding that prison regulations did not impose a substantial burden on Wright's religious exercise, the district court improperly relied on the logistical burdens that acceding to Wright's request would place on the prison system. *See* J.A. 830. If the prison would face burdens in relaxing its policies to accommodate

9

Wright's request, those burdens are relevant at the second stage of the analysis: whether strong enough governmental interests justify the prison's policies. The burdens on the prison are not relevant at the first stage, where we must focus upon the burdens on Wright himself.

Even so, this error does not require reversal. While we usually remand when the district court has misapplied the relevant legal standard after a bench trial, we may affirm when the evidence permits only one conclusion. *Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*, 827 F.3d 333, 345 (4th Cir. 2016). And that is true here, because Wright has not introduced sufficient evidence to show that the prison's policies were the cause of any burden on his exercise of religion.

Both Wright's First Amendment claim (brought under 42 U.S.C. § 1983) and his RLUIPA claim require him to prove causation: that is, he must show that the Defendants' policies are the cause of the alleged burden on his exercise of religion. The specific issue here is factual causation (also sometimes called actual cause, causation-in-fact, and "but-for" causation), which requires a plaintiff to show that his injury would not have occurred but for the defendant's conduct. *Burrage v. United States*, 134 S. Ct. 881, 890 (2014).

We have expressly held that § 1983 incorporates a causation requirement. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). And RLUIPA's text does as well. The defendant must "impose" a substantial burden to be held liable, 42 U.S.C. § 2000cc-1(a), which requires a showing that the defendant caused the burden to exist. The surrounding text confirms this, explaining that the government imposes a burden "even if the burden

*results from* a rule of general applicability." *Id.* (emphasis added). That is, a burden is "imposed" by the government if it "results from" the government's policies. And the phrase "results from" includes, at a minimum, the concept of factual causation. *Burrage*, 134 S. Ct. at 889.

Our precedent confirms what RLUIPA's text requires. RLUIPA incorporates "customary tort principles." *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006). One of these customary tort principles is the requirement to show factual and proximate cause. *Paroline v. United States*, 134 S. Ct. 1710, 1719–20 (2014). And in RLUIPA land-use cases, we have implicitly required causation, holding that the burden in question must have been imposed by the defendants and not "self-imposed" by the plaintiffs themselves. *Andon, LLC v. City of Newport News*, 813 F.3d 510, 515 (4th Cir. 2016); *cf. Bader v. Wrenn*, 675 F.3d 95, 98 (1st Cir. 2012) (concluding "a lack of outside clergy, volunteer visitors, and practicing co-religionists in the prison," not decision to transfer the plaintiff to a different prison, had caused the burden on plaintiff's religious exercise); *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004) (holding burden resulted from "a dearth of qualified outside volunteers" to lead religious gatherings, not any prison policy prohibiting the gatherings).

Wright's causation problem stems from the fact that he has requested *communal* gatherings and feasts. There is no such thing as a community of one, and Wright agreed at oral argument that he was not seeking a feast for himself alone. He therefore had to show that, but for the policies that allegedly prohibit the requested holiday gatherings, other inmates would join in the gatherings. To put it in the negative, if other inmates

11

would not join in his gatherings, then the prison's restrictive policies would not be a factual cause of the burden he claims to have experienced.

Wright provided no direct evidence to show that other inmates would join his gatherings. There was no testimony showing that any other Rastafarian at Central Prison or any other North Carolina prison had joined in his requests to celebrate in the manner he requested or would attend his gatherings if they were held. There was one instance in 2014 in which other Rastafarian inmates joined Wright in requesting to celebrate August 17 as a Rastafarian holiday. J.A. 373–74, 680. But August 17 is not one of the seven holidays and holy days Wright seeks to celebrate communally. If anything, the record suggested that other inmates did not join in his requests. At oral argument, Wright conceded that—at least based on the trial record—he was the only member of the Ba Beta Kristiyan mansion in the entire North Carolina prison system. In fact, it is possible he was the only member of Ba Beta Kristiyan in North Carolina inside or outside of prison: he testified that, during the short time he lived there before his arrest, "we celebrated individually at the house." J.A. 221.

We reject Wright's suggestion, made at oral argument, that requiring him to prove causation would be an unreasonable imposition. Of course, inmates need not identify and disprove every conceivable impediment that might stand in the way of carrying out their requested religious exercise. We doubt, for example, that an inmate seeking communal gatherings must prove as part of his case-in-chief that there are enough chairs in the prison chapel. But he must adduce enough evidence to permit a reasonable finder of fact to conclude—not merely speculate—that such gatherings would occur. In this case,

12

attendance by other inmates was fundamental to Wright's request. Wright had a full and fair opportunity to identify through discovery, and then to call at trial, witnesses who could testify that other inmates had an interest in attending his proposed gatherings. Yet he did not produce even one such witness.

The record does suggest one potential basis to conclude that other Rastafarians in the prison system might attend Wright's gatherings. In the proceedings below, Wright consistently claimed that *all* Rastafarians shared his beliefs about how to celebrate the holidays in question. He said as much in his requests to the prison officials, claiming: "Holy days and holidays are periods of Solemn for the Rastafarian Community Worldwide." J.A. 24. At trial, Wright similarly testified that these days "are the core holidays of all the mansions of Rastafarian[ism]." J.A. 265. His expert, Severin, testified that the four holy days are celebrated by all Rastafarians, subject to only minor differences in name and what food is eaten at the feasts. J.A. 290–92. And at summation, Wright's counsel argued that each of these holy days was important to the "Rastafarian community as a whole." J.A. 441. The district court appeared to reject this claim and accept the testimony of the Defendants' expert, Dr. Price, who opined that Wright's beliefs about exactly how to celebrate these days were particular to the Ba Beta Kristiyan mansion.

If Wright had proved that all Rastafarians share his beliefs about these days, that might well have been enough circumstantial evidence that at least some other Rastafarian inmates would join him at his proposed gatherings. But we need not decide that issue, because Wright has abandoned this theory on appeal. Before us, Wright characterizes

13

Severin's testimony about the tenets of Rastafarianism writ large as "informative background," Reply Brief of Appellant at 12, and says that this testimony was intended to prove "what *Wright's* faith required," Brief of Appellant at 32 (emphasis added). Indeed, throughout his argument on appeal, Wright has taken great pains to emphasize that his beliefs about these days are not necessarily the same as other Rastafarians'. And when the Defendants raised the causation issue in their brief, Wright did not seek to rely on record evidence suggesting that other Rastafarians share his beliefs about holding the requested communal celebrations on these days.

Instead, Wright seems to argue that he need not prove causation, claiming that all he seeks is the "opportunity" to hold the requested gatherings. Reply Brief of Appellant at 11. Yet nothing in RLUIPA or the First Amendment requires prisons to make futile gestures in support of religious exercise. They need not change their policies to permit religious gatherings that will never take place. And it is the plaintiff's burden to prove that the requested religious exercise would occur if the prison granted his request, not the defendant's burden to disprove it. Because Wright did not carry that burden, the judgment of the district court is

*AFFIRMED.*