**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-7382**

DEAULLANDY GORAN COLEMAN,

Plaintiff – Appellant,

v.

SERGEANT JONES; MAJOR JOHNSON,

Defendants – Appellees,

and

CHAPLAIN SCHWARTZLOW,

Defendant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:18-cv-00931-AJT-IDD; 1:18-cv-00896-AJT-JFA)

Argued:  January 27, 2022                     Decided:  June 17, 2022

Before KING, THACKER, and HARRIS, Circuit Judges.

Vacated and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge King and Judge Thacker joined.

**ARGUED:**  Barrett Anderson, Timothy Shriver, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Justin Lee Criner, THE BEALE LAW

FIRM, PC, North Chesterfield, Virginia, for Appellees. **ON BRIEF:** J. Scott Ballenger, Sarah Shalf, Eva Lilienfeld, Third Year Law Student, Kimberly Veklerov, Third Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. William F. Etherington, Thomas N. Jamerson, Greer Q. Drummond, THE BEALE LAW FIRM, PC, North Chesterfield, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

While an inmate at Virginia's Henrico County Regional Jail, Deaullandy Coleman, a devout Muslim, requested the Kosher diet provided to Jewish inmates, which he said would satisfy the requirements of his faith. His requests were denied, and to comply with Islamic dictates, he was required instead to eat the vegetarian "Common Fare" meals made available to all non-Jewish inmates with religious dietary restrictions. Coleman alleges that this meatless diet left him malnourished, unhealthy, and too weak to pray properly.

Coleman filed an action in district court, alleging that by denying him access to Kosher meals, prison officials impermissibly burdened his religious exercise under the Free Exercise Clause and engaged in religious discrimination prohibited by the Establishment Clause and Equal Protection Clause. He also brought similar state-law claims under analogous provisions of the Virginia Constitution.

At summary judgment, the district court found that there were triable issues of fact as to whether Coleman was provided with nutritionally adequate meals that conformed to his sincere religious beliefs and whether the denial of Kosher meals to Muslim inmates was the result of intentional religious discrimination. Nevertheless, the court went on to grant summary judgment to the defendant prison officials on qualified immunity grounds, holding that they had violated no "clearly established" right. Because the district court's qualified immunity analysis appears to be incomplete and fails to account for its findings on the merits, we vacate and remand for further consideration.

3

## I.

## A.

During the time relevant to this appeal, Coleman was incarcerated at the Henrico County Regional Jail ("Henrico") in Virginia.[1]  As a devout Muslim, Coleman follows Halal dietary restrictions, governing the foods he may eat consistent with his faith. According to Coleman, his sincere religious beliefs permit him to consume Kosher meat.

Henrico provides three types of meals to its inmates.  The "regular diet," available to all inmates, includes meat.  So does the "Kosher diet," which is made available only to Jewish inmates.  Finally, there are "Common Fare" meals, provided to all non-Jewish inmates with religious dietary restrictions.  Because those meals must be acceptable to a wide range of religious believers, they are exclusively vegetarian.  Henrico pays its contractor the same amount for each type of meal, and the contractor also could provide, at that same cost, a meal with meat that is "dual-certified" as both Kosher- and Halal-compliant.

When Coleman arrived at Henrico, he was placed on the default regular diet, which is not Halal-compliant.  Seeking food consistent with his religious beliefs, on March 8, 2018, he requested Halal-compliant meals from Sergeant Josie Jones.  Six weeks later, after multiple follow-up requests, he was approved for the vegetarian Common Fare diet.

---

[1] Coleman has since been transferred to a different Virginia Department of Corrections facility, so any claims for prospective equitable relief are moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  On appeal, Coleman advances only claims for monetary damages.

4

The events giving rise to this lawsuit began approximately a week later, when Coleman met with Sergeant Jones to request Kosher meals instead. Coleman explained that he was not getting enough calories from the "no-meat" Common Fare diet and that the Kosher diet – which included meat – would allow him to get enough to eat while also satisfying his religious obligations.[2] J.A. 56–57; *id.* at 54. Coleman made a second request for the Kosher diet in mid-May, which was forwarded to Major Sandra Johnson for review.

On May 23, 2018, Sergeant Jones denied Coleman's request. Jones noted, on Coleman's request form, his "concern about not getting enough calories" on the Common Fare diet. J.A. 232. She also noted her response – that the Common Fare meals were certified by a dietician – and then refused to allow the Kosher diet because Coleman is not Jewish. Although Henrico has no written policy about which inmates may receive which religious meals, Jones understood – and told Coleman – that the Kosher diet was exclusively for Jewish inmates and would not be provided to Muslims. *See, e.g.*, J.A. 64 ("[H]e said well, Sergeant Jones, why can't I get a kosher meal? And I said because your religion is Muslim."). Coleman also spoke with Major Johnson about his request for the Kosher diet, and Johnson likewise denied that request, also on the ground that Coleman is not Jewish. *See, e.g.*, J.A. 103 ("If you're saying you're Muslim then you get halal. If you're saying you're Jewish, you'll get [K]osher.").

---

[2] At summary judgment, Coleman put forth expert testimony explaining that Islamic and Jewish dietary restrictions share many similarities, and that religious scholars have concluded that Muslims may consume Kosher meat when faced with a lack of access to Halal-certified meat.

5

The parties disagree about the effects of this denial on Coleman's health. Coleman alleges that the vegetarian Common Fare diet to which he was restricted was nutritionally inadequate, leaving him undernourished and too weak to pray properly. According to Coleman, he experienced significant stomach pain and bowel issues, and lost between 15 and 25 pounds during his incarceration at Henrico. The defendants, for their part, do not dispute that Coleman lost a significant amount of weight, but they contend that this was because Coleman stopped eating at various points and not because of any inadequacies in the Common Fare diet.

**B.**

In July 2018, Coleman filed a pro se complaint under 42 U.S.C. § 1983, alleging that Sergeant Jones and Major Johnson violated his rights by denying him access to a diet consistent with his religious beliefs.[3] In November 2019, after procuring counsel, Coleman filed the amended and operative complaint in this case. In it, Coleman raised two sets of federal claims relevant to this appeal. First, Coleman alleged that the defendants violated his rights under the First Amendment's Free Exercise Clause by failing to provide him with nutritionally adequate meals conforming to his religious beliefs, instead subjecting him to a vegetarian diet that caused adverse health effects. Second, Coleman alleged that by providing Jewish but not Muslim inmates with religiously compliant meals that included meat, the defendants engaged in religious discrimination prohibited by the First

---

[3] A third defendant, Chaplain Gerald Schwartzlow, has since been dismissed from the case.

6

Amendment's Establishment Clause and the Fourteenth Amendment's Equal Protection Clause. He also alleged violations of similar provisions of the Virginia Constitution.[4]

After discovery, the district court granted summary judgment to the defendants on all counts. *Coleman v. Jones*, No. 1:18-CV-931 (AJT/IDD), 2020 WL 5077735, at *9 (E.D. Va. Aug. 26, 2020). With respect to the merits of Coleman's federal claims, the district court found genuine issues of material fact that would preclude an award of summary judgment. *Id.* at *6–8. But the court agreed with the defendants that they nevertheless were entitled to qualified immunity as a matter of law, because the rights they allegedly violated were not sufficiently "clearly established." *Id.* at *8.

1.

The defendants contested only Coleman's free exercise claim on the merits, so that claim was the focus of the court's thorough merits analysis. The court found, first, that Coleman had established a triable issue as to the sincerity of his religious belief that a Kosher meal, with meat, would "satisfy the strictures of eating Halal according to his faith." *Id.* at *5. It likewise found a material dispute of fact as to whether the denial of Kosher meals had "substantially burdened" the exercise of Coleman's religious beliefs, as required to make out a free exercise claim. *Id.* at *6; *see id.* at *4 ("[T]he plaintiff must show that

---

[4] Coleman's complaint also included a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* The district court dismissed this claim, noting that RLUIPA does not provide for monetary damages against the defendants and that Coleman's transfer from Henrico mooted any claims for equitable relief. *See Coleman v. Jones*, No. 1:18-CV-931 (AJT/IDD), 2020 WL 5077735, at *4 (E.D. Va. Aug. 26, 2020). Coleman does not challenge that dismissal on appeal.

the prison's policies or actions 'imposed a substantial burden on his exercise of sincerely held religious beliefs.'" (quoting *Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019))).

The court was careful to identify the precise nature of the "substantial burden" it was recognizing. To the extent Coleman argued that it was the denial of meat itself that burdened his religious exercise – that he was entitled, in other words, to a diet that was both Halal-compliant and non-vegetarian – the district court disagreed. In the court's view, so long as a prisoner is provided with a diet that meets his religious needs and is nutritionally adequate, "courts have generally been reluctant" to treat the absence of meat as a "substantial burden." *Id.* at \*6 (citing, inter alia, *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008)). But, the court continued, an inmate does have a right to receive a nutritionally adequate diet consistent with his religious beliefs, and cannot be forced to "choose between daily nutrition and religious practice." *Id.* (internal quotation marks omitted). And here, there was a "significant dispute of fact" as to whether the vegetarian Common Fare diet to which Coleman was limited was nutritionally adequate, as the defendants contended, or whether, as Coleman alleged, that diet caused him to lose weight, suffer significant health issues, and have difficulty praying. *Id.* Given that dispute of fact, the court concluded, a "reasonable jury could find" the necessary substantial burden on religious exercise. *Id.*

Finally, the court had no difficulty in applying the last step of the Free Exercise Clause analysis: whether the denial of Coleman's requests for Kosher meals was "reasonably related to legitimate penological interests" under *Turner v. Safley*, 482 U.S. 78 (1987). Each of the four factors laid out in that decision, the court determined, weighed

8

"heavily" in Coleman's favor: Kosher meals cost no more than any other meal, and beyond vague administrative concerns, the defendants had offered no justification for why they could not simply add one additional Kosher meal to their order from their contractor or, if they preferred, avail themselves of the dual-certification option, ordering meals certified as both Kosher and Halal and providing them to Jewish and Muslim inmates alike. *Coleman*, 2020 WL 5077735, at *6–7. "In short," the district court concluded, "the administrative burden is so low, and the impact on the functioning of Henrico and the food service so minimal, that a reasonable jury could easily find" that the defendants' policy was not reasonably related to any legitimate penological objective. *Id.* at *7.

2.

The district court turned next to Coleman's Establishment Clause and Equal Protection claims which, the court noted, shared the "same rationale" and factual predicate, *id.* at *8: By providing Jewish inmates but not Muslim inmates like Coleman with a religiously compliant meal that included meat, the defendants favored one religion over another and discriminated against Coleman based on his religion, violating both the First Amendment's Establishment Clause and the Fourteenth Amendment's Equal Protection Clause. *Id.* at *7–8. The defendants contested neither of these claims on the merits, instead relying entirely on a qualified immunity defense. *Id.* And here again, the district court found that a reasonable jury could agree with Coleman that the defendants had engaged in impermissible religious discrimination. *Id.*

As the district court explained, Kosher meals were the only religiously compliant meals that included meat; all other religiously compliant meals, including Halal meals,

9

were strictly vegetarian. *Id.* And as it had noted already in applying the *Turner* factors to Coleman's free exercise claim, the defendants had "largely failed to provide a reasonable explanation" as to why Coleman could not have been provided a Halal meal with meat, or why dual-certified Halal and Kosher meals with meat could not be provided to all Jewish and Muslim inmates. *Id.* at *7. As a result, the court concluded, a reasonable jury could believe that the defendants were "preferencing Judaism" in violation of the Establishment Clause. *Id.* Similarly, a reasonable jury could conclude not only that "Muslim inmates were treated differently than similarly situated Jewish inmates," but that "such differential treatment was based on intentional discrimination that was not related to any legitimate penological interest," in violation of the Equal Protection Clause. *Id.* at *8.

3.

Having concluded that Coleman had established triable issues of fact on the merits of his claims, the district court turned finally to the issue of qualified immunity. As the court explained, qualified immunity protects officials like the defendants in this case from damages liability unless they have violated a right that is "clearly established" at the time of the violation – that is, a right "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *See id.* at *8 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The defendants argued that they were entitled to qualified immunity "because there was no clearly established right to be given meals with meat in them when there existed a religiously-compliant vegetarian alternative," and the district court agreed: "Courts have consistently found that inmates are entitled to meals that are consistent with their religious beliefs, . . . but also that there is no right to non-

10

vegetarian meals." *Id.* The district court offered no other reasoning, save to note that the defendants believed they were "satisfying [Coleman's] religious beliefs that he must only eat Halal, and were satisfying Jewish inmates' beliefs that they must eat Kosher." *Id.*

The district court also held that the defendants were entitled to qualified immunity on Coleman's state constitutional claims. As Coleman argued and the district court recognized, the defendants had not presented a theory of state-law immunity that would protect them. *Id.* at *9 & n.11. But the district court believed that Virginia courts would apply the same "clearly established" qualified immunity analysis that governed federal constitutional claims, and thus, for the reasons already given, granted qualified immunity for the state constitutional claims, as well. *Id.* at *9.

## II.

On appeal, Coleman argues that the district court erred in granting qualified immunity to the defendant officers as a matter of law, largely because the court's qualified immunity holdings cannot be squared with its findings on the merits of Coleman's claims. The defendants do not dispute the district court's merits analysis. They continue to argue, however, that because there is no right to a diet including meat – clearly established or otherwise – they are entitled to qualified immunity on all counts. We agree with Coleman, to this extent: The district court's qualified immunity analysis does not account for its determination that a reasonable jury could find both that Coleman was deprived of a nutritionally adequate and religiously compliant diet with no sufficient justification and that he was subjected to intentional discrimination based on his religion. Nor does it

11

account for Virginia's distinct state immunity doctrines. Accordingly, we remand for further consideration of the qualified immunity issue by the district court.

### A.

With respect to Coleman's federal claims, there is no question as to the governing qualified immunity standard. "Qualified immunity shields federal and state officials from money damages" unless a plaintiff can show both the violation of a constitutional right and "that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (internal quotation marks omitted).

### 1.

The law governing Coleman's Free Exercise Clause claim is equally well-settled. Under the Free Exercise Clause, as the district court recognized, a prisoner has a right to a nutritionally adequate diet that is consistent with his religious beliefs. *See Coleman*, 2020 WL 5077735, at *6; *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014) (describing prisoner's Free Exercise Clause right to "a diet consistent with his religious scruples" (cleaned up)); *Ross v. Blackledge*, 477 F.2d 616, 619 (4th Cir. 1973) (remanding for evidentiary hearing on whether "there is adequate nourishment in the pork-free foods currently available to [Muslim] prisoners"). The defendants agree, expressly embracing the long-standing principle that what prisons must provide a religious inmate is "a diet sufficient to sustain

12

the prisoner in good health without violating [his religion's] dietary laws." *See* Response Br. at 10 (quoting *Kahane v. Carlson*, 527 F.2d 492, 496 (2d Cir. 1975)).

Moreover, an inmate's free exercise right to this dietary accommodation was "clearly established" in our circuit well before the 2018 events at issue in this appeal. *See, e.g.*, *Wall*, 741 F.3d at 502 (explaining that right to religious dietary accommodations in prison is "clearly established" for qualified immunity purposes); *Lovelace v. Lee*, 472 F.3d 174, 198–99 (4th Cir. 2006) (same). And it is equally settled that a prison official "violates this clearly established right if he intentionally and without sufficient justification denies an inmate his religiously mandated diet." *Wall*, 741 F.3d at 502. Again, none of these basic principles is disputed in this case.

Nor, finally, have the defendants disputed the district court's finding that on this summary judgment record, a reasonable jury could find that Coleman in fact was denied a Halal-compliant diet that was nutritionally adequate. As the district court explained, this point was contested by the parties, with Coleman alleging that his Common Fare meatless diet, though religiously compliant, left him badly malnourished, and the defendants contending that Coleman's vegetarian meals were nutritionally sufficient. *Coleman*, 2020 WL 5077735, at *6 ("There remains a significant dispute of fact as to whether [Coleman's] physical health issues and his inability to pray were caused by Henrico's failure to allow him to eat the Kosher meal[.]"). But Coleman, the court concluded, who relied on medical records as well as interrogatories, had established a triable issue of fact for a jury on the question. *Id.* And, as described above, the district court also found that Coleman had established a strong case that he was denied Kosher meals for no good reason, so that a

reasonable jury "easily" could find that the alleged burden on his religious exercise was "not reasonably related to any legitimate penological objective" under *Turner*. *Id.* at *7.

Despite all this – an undisputed and clearly established right to nutritionally adequate and religiously compliant meals, plus a jury question as to whether that right was abridged without justification under the *Turner* standard – the defendants argue, and the district court agreed, that they are entitled to qualified immunity for one reason: because there is no clearly established right to a nutritionally adequate and religiously compliant diet *that includes meat*. *See id.* at *8. But even assuming that is correct, it is a complete non sequitur here. Coleman's arguments, to be sure, often emphasize the lack of meat in the Common Fare diet to which he was restricted. But his *claim* is not that he was denied meat; it is – to quote his complaint – that he was denied "*nutritionally adequate* meals that conform to his sincere religious beliefs." J.A. 18 (emphasis added). Indeed, the district court understood as much in its merits analysis, distinguishing between a free-standing "right to meat" – which courts "generally [have] been reluctant to find" – and the right to a nutritionally sufficient and religiously compliant meal, as to which there remained a "significant dispute of fact" that would preclude an award of summary judgment. *Coleman*, 2020 WL 5077735, at *6. The district court offered no rationale other than the absence of a "right to non-vegetarian meals" for its qualified immunity ruling, and it did not address the apparent incongruity between that ruling and its merits determination. *Id.* at *8. Accordingly, we remand so that the district court may more fully evaluate the qualified immunity issue in the first instance.

14

To be clear, we do not rule out the possibility that there is some other basis on which the defendants could claim qualified immunity. At oral argument, for instance, a question arose as to whether the individual defendants, Sergeant Jones and Major Johnson, would have been on notice as to any nutritional deficiency in Coleman's Halal-compliant Common Fare meals. That could be an important question: The "clearly established" standard requires not only that existing precedent clearly identify the right in question, but also that it be clear to the defendant that his conduct would violate that right in the situation as he reasonably understood it. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018); *see also Lovelace*, 472 F.3d at 198–99 (explaining that qualified immunity is precluded where officer acts intentionally in depriving prisoner of religiously compliant meals). But this issue has not been addressed by the parties in their briefs or passed on by the district court. Nor is the answer obvious: There are record indications that Jones at least was aware of Coleman's concerns about the nutritional adequacy of his Common Fare diet, *see* J.A. 232 (Jones noting Coleman's complaint that he was "not getting enough calories"), but also indications that she believed those meals to be nutritionally sufficient, *see id.* (Jones noting that prison menus are "certified by Henrico County [dieticians]"). Under these circumstances, we follow our normal course and leave this question – and any others bearing on the defendants' qualified immunity defense – to the district court in the first instance. *See, e.g.*, *Fusaro v. Cogan*, 930 F.3d 241, 263 (4th Cir. 2019) (adhering "to the principle that the district court should have the first opportunity to perform the applicable analysis").

15

2.

We reach a similar conclusion with respect to the grant of qualified immunity on Coleman's religious discrimination claims. First, it has been clearly established since well before 2018, when the events at issue here occurred, that intentional or purposeful discrimination based on religion, if not sufficiently justified, violates the Equal Protection Clause, *see, e.g.*, *Morrison v. Garraghty*, 239 F.3d 648, 654–55 (4th Cir. 2001) (outlining equal protection standard in prison context), and that preferring one religious sect over another violates the Establishment Clause, *see Larson v. Valente*, 456 U.S. 228, 244–46 (1982) (describing Establishment Clause bar on denominational discrimination). None of that is disputed by the defendants, and the district court carefully applied this well-established law in assessing the merits of Coleman's religious discrimination claims.[5] *Coleman*, 2020 WL 5077735, at *7–8.

Second, the district court determined that on this summary judgment record, a reasonable jury could find that the defendants intentionally discriminated against Coleman based on his Muslim religion, and did so without any legitimate penological justification under the *Turner* standard that applies in the prison context. *See id.* The defendants, the

---

[5] As the district court explained, Coleman's religious discrimination claims sound in both the Establishment Clause and the Equal Protection Clause, and its analysis under each clause overlaps in significant respects. *See Coleman*, 2020 WL 5077735, at *8. On appeal, Coleman addresses the two claims together, as variations on a claim of intentional discrimination based on religion, while noting that the Free Exercise Clause also protects against religious discrimination. *See, e.g.*, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). Following Coleman's lead, we address these discrimination claims together in this opinion, as well.

16

district court noted, had "largely failed to provide a reasonable explanation" as to why Jewish inmates but not Muslim inmates were provided with religiously compliant meals that included meat. *Id.* at \*7. And given the ease with which the defendants could have accommodated Coleman's request for Kosher meals, their refusal to do so – on the sole ground that Coleman is Muslim and not Jewish – created a jury question as to whether their differential treatment of similarly-situated prisoners was "based on intentional discrimination" and unrelated to "any legitimate penological interest." *Id.* at \*8.

Again, we find it difficult to reconcile those findings with a grant of qualified immunity based only on the absence of a clearly established "right to non-vegetarian meals," *id.* Whether or not Coleman has a freestanding right to meat, it is clearly established that the defendants may not deny him a diet with meat "based on intentional discrimination" against Muslims – and a jury could find, the district court concluded, that the defendants did exactly that. *Id.* Indeed, we and other courts have suggested that when, as here, there is a triable issue as to whether defendants engaged in a constitutional violation that incorporates intent as an element, qualified immunity may be inappropriate. *See Thorpe v. Clarke*, __ F. 4th. __, 2022 WL 2128301, at \*4 (4th Cir. June 14, 2022) ("[W]hen plaintiffs have made a showing sufficient to demonstrate an intentional violation of the Eighth Amendment, they have also made a showing sufficient to overcome any claim to qualified immunity." (internal quotation marks omitted)); *Lowe v. City of Monrovia*, 775 F.2d 998, 1011 (9th Cir. 1985) (holding that a government official is not entitled to qualified immunity from a Section 1981 or 1983 action that is based on a claim of intentional discrimination), *amended*, 784 F.2d 1407 (9th Cir. 1986); *see also Williams v.*

17

*Hansen*, 326 F.3d 569, 582 (4th Cir. 2003) (King, J., dissenting) (in equal protection context, defendants "should not be awarded qualified immunity" where plaintiffs alleged facts indicating that disparate treatment was "both injurious and motivated by discriminatory animus").

The district court has not explained why the defendants are entitled to qualified immunity as a matter of law given its determination that they may have intentionally discriminated against Coleman because he is a practicing Muslim. Nor have the defendants addressed that issue in their briefing before us.[6] Accordingly, as with the grant of qualified immunity on Coleman's free exercise claim, we remand so that the district court may further consider this issue.

---

[6] In their brief, the defendants do not discuss qualified immunity at all in connection with Coleman's discrimination claims – despite relying solely on qualified immunity with respect to those claims before the district court. *See Coleman*, 2020 WL 5077735, at *7– 8. Instead, they assert in a single sentence that Coleman's equal protection claim fails on the merits because "[n]o intentional discrimination has been shown, merely different treatment." Response Br. at 13. The district court, of course, ruled precisely to the contrary, holding that a reasonable jury "could find that Muslim inmates were treated differently than similarly situated Jewish inmates at Henrico, *and that such differential treatment was based on intentional discrimination* that was not related to any legitimate penological interest." *Coleman*, 2020 WL 5077735, at *8 (emphasis added). If the defendants intend to argue that this ruling – which they never acknowledge – was in error, then their argument is doubly waived: First, the defendants did not contest this claim on the merits in the district court, *see id.* at *8 ("Defendants again do not contest the underlying claims, but instead claim they are entitled to qualified immunity."), and we generally will not address contentions raised for the first time on appeal. *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993). And second, a single conclusory sentence that does not even refer to the allegedly improper district court holding is insufficient to preserve an argument on appeal. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006).

**B.**

Finally, we turn to the district court's grant of qualified immunity on Coleman's state constitutional claims. As noted above, in addition to his federal constitutional claims, Coleman alleged violations of similar provisions of the Virginia Constitution: Article I, Section 16, which guarantees religious liberty and has both a free exercise and an establishment clause; and Article I, Section 11, which guarantees, among other things, the right "to be free from any governmental discrimination upon the basis of religious conviction." *See* Va. Const. art. I § 16; *id.* § 11. Although the defendants did not expressly assert qualified immunity as to these state-law claims, the district court read their general reference to "qualified immunity" as applying to all constitutional claims, both state and federal. *See Coleman*, 2020 WL 5077735, at *9 n.11. And although the defendants did not explain *why* they might be entitled to qualified immunity as to Coleman's state-law claims, the district court believed the matter was straightforward: "[T]hough Virginia courts [had] not expressly ruled whether federal qualified immunity analysis applies equally to state constitutional claims," those courts likely would apply the same federal "clearly established" standard that applies to federal constitutional claims. *Id.* at *9. Accordingly, for the reasons the district court already had given in connection with Coleman's federal claims, the defendants also were entitled to qualified immunity on his state constitutional claims. *Id.*

Contrary to the district court's understanding, however, Virginia's state law of immunity for individual defendants does not mirror the federal immunity analysis. As the Virginia Supreme Court recently explained, "federal immunity doctrines . . . are

19

independent of state immunity doctrines." *See Viers v. Baker*, 841 S.E.2d 857, 861 (Va. 2020). Instead of applying the "clearly established" standard familiar in federal court, Virginia courts consider first whether an official's employer is protected by sovereign immunity, and then, if it is, whether the official is entitled to shield himself with the immunity of his employer under a multi-factor test. *See Messina v. Burden*, 321 S.E.2d 657, 663 (Va. 1984); *James v. Jane*, 282 S.E.2d 864, 869 (Va. 1980). Here again, we follow our normal course and remand so that the district court may consider the application of Virginia's qualified immunity law in the first instance.[7]

## III.

For the foregoing reasons, we vacate the district court's grant of summary judgment to the defendants and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[7] We appreciate that the district court decided this question without briefing from the defendants, which may have led to the confusion over the applicable law. Indeed, the defendants have declined at every turn – including before this court – to put forth an actual theory under which they are entitled to qualified immunity on Coleman's state constitutional claims. We leave it to the district court to consider whether the defendants waived any argument on state-law qualified immunity by failing to raise it earlier before that court.

20